**Pages 1 - 14**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

```
ATAIN SPECIALTY INSURANCE       )
COMPANY, a Michigan             )
corporation,                    )
                                )
            Plaintiff,          )
                                )
   VS.                          )    NO. C 15-05124 JD
                                )
ARMORY STUDIOS, LLC, a          )
California limited liability    )
company; PETER ACWORTH, an      )
individual,                     )
                                )
            Defendants.         )
_____)
```

San Francisco, California
Thursday, July 19, 2018

**<u>TRANSCRIPT OF PROCEEDINGS</u>**

**<u>APPEARANCES</u>:**

For Plaintiff:

    Mokri Vanis & Jones, LLP
    4100 Newport Place Drive, Suite 840
    Newport Beach, CA  92660
    (949) 226-7040
   **BY:  GAILANN Y. STARGARDTER**

For Defendant:

    Nielsen, Haley & Abbott LLP
    100 Smith Ranch Road, Suite 350
    San Rafael, CA  94903
    (415) 693-0900
   **BY:  CHRISTINE YOUNG**

Reported By:  Lydia Zinn, CSR No. 9223, FCRR, Official Reporter

1 | **Thursday - July 19, 2018**                                    **10:38 a.m.**

2 |                          P R O C E E D I N G S

3 |                              ---oOo---

4 |          **THE CLERK:**  Calling Civil 15-5124, Atain Specialty

5 | Insurance versus Armory Studios.

6 | (Whereupon a document was tendered to the Court.)

7 |          **THE COURT:**  Thank you.

8 |          **MR. STARGARDTER:**  Good morning, Your Honor.

9 | Gail Stargardter, for Atain Specialty.

10 |          **MS. YOUNG:**  Good morning, Your Honor.

11 | Christine Young, for defendants Armory Studios and

12 | Peter Acworth.

13 |          **THE COURT:**  Okay.  This is interesting.  Why --

14 | here's what I'm thinking.  And this is evolving, but let me

15 | share with you what I'm thinking.  The mediation privilege is

16 | very broad.  There's no doubt about that.  And it's an

17 | important privilege.  And it needs to be honored and upheld,

18 | but it expressly goes only to the communications, negotiations,

19 | and discussions that happen at the mediation.

20 |     The fact that someone was present at a mediation, in my

21 | view, is not privileged.  It's not something that mediation

22 | privilege was suppress.

23 |     And the fact that the person had been invited, maybe, by a

24 | certain party to be there is also not privileged.  In other

25 | words, it's akin, in my mind, to the even more sacred and

1  ironclad attorney-client privilege, where the underlying facts

2  are never privileged; it's just the content of the

3  communications.

4       And so, starting from that premise, which you can all

5  address in a moment, the insurance law -- insurance case law

6  makes clear the insurer just has to have a fair opportunity to

7  object to a proposed settlement, and say they'll take over the

8  defense.  I don't need to look at the communications that

9  happened during mediation.  I don't need to hear anything about

10 the contents of those communications.  All that I need to know

11 is that there was an attorney representative of the insured

12 present; and she had an opportunity to say, "I don't like this

13 settlement."

14       Seems to me that is the end of matter, but what do you

15 think?

16          **THE COURT:**  I'll start with you, Ms. Young.

17          **MS. YOUNG:**  Thank you.

18          **THE COURT:**  Yes.

19          **MS. YOUNG:**  I don't disagree with what Your Honor has

20 said.  We wanted to preserve the privilege, which is why we

21 made the objections; but we don't disagree that in this matter,

22 even the evidence put forward by Atain referencing those

23 specific communications during mediation don't necessarily have

24 a practical impact on the analysis, anyway, because, as

25 Your Honor pointed out, what matters is whether Atain

1  communicated certain information enabling their intent to

2  reserve the right to seek reimbursement; and whether Atain

3  advised defendants that if they disagreed with the proposed

4  settlement, they had the right to assume their own counsel in

5  those events.

6          **THE COURT:**  Ms. Stargardter.  Did I get that right?

7          **MR. STARGARDTER:**  Yes, yes, you did.

8          **THE COURT:**  Yeah.

9          **MR. STARGARDTER:**  So with respect to the mediation

10 privilege, I -- I agree Your Honor.  And I agree that we don't

11 even really need to get into it, because the course of conduct;

12 the fact that Ms. Tynan is personal counsel; the fact that

13 Mr. Nielsen, who's coverage counsel, who was available by

14 phone -- were there, there was consent.

15     And I think what, to me, is very critical, Your Honor,

16 nowhere in her declaration does Ms. Tynan say she did not

17 consent to the settlement.  And so I --

18          **THE COURT:**  Well, let me pause on that.  That is an

19 interesting point.  And it's interesting to me for two reasons.

20     One, there is no representation that there's a big fight

21 about it; this was, you know, to put it inelegantly, "shoved

22 down her throat," over protest.  There's no allegation about

23 that; but even if she had said that, you could argue that she's

24 then waived mediation privilege.  I mean, you can't -- you

25 can't disclose a handful of communications, and stand on

1  mediation privilege for the rest of the discussion.  So, you

2  know, it's a little bit of a bind.  I mean, the price of -- of

3  the privilege comes at nobody gets to say anything about it.

4  You can't selectively quote what happened.  So.

5      I am not hearing either of you sort of disagree with the

6  analytical construct.  Is that right?

7              **MR. STARGARDTER:**  That's correct.

8              **THE COURT:**  Did I lay it out, Ms. Stargardter?

9              **MR. STARGARDTER:**  That's correct, Your Honor.  I

10  don't disagree with you.

11              **THE COURT:**  Ms. Young?

12              **MS. YOUNG:**  Yes.

13              **THE COURT:**  That will probably be the way I go.  Is

14  there anything else you would like to add?

15              **MS. STARGARDTER:**  Unless you want argument on the

16  merits as to whether we properly reserved our rights.

17              **THE COURT:**  Well, I saw the letter, and it was

18  timely.  And I think that's it.  Is there anything you say

19  about that, Ms. Young?

20              **MS. YOUNG:**  About the merits of whether they

21  fulfilled the requirements of *Blue Ridge*, Your Honor?

22              **THE COURT:**  Well, I mean whether the reservation was

23  timely, and expressed.  Why do you think that would not be

24  true?

25              **MS. YOUNG:**  I think that is not true because the

1  reservation was made two years -- more than two years before a

2  specific settlement offer was made.  And I think that

3  *Blue Ridge* requires that the reservation be timely as to that

4  specific settlement proposal.

5      And I think you have to look at the context of *Blue Ridge*

6  to get there; and that is in *Blue Ridge* there were two

7  reservations.  There was the initial reservation made at the

8  time of tender, and there was a reservation made at or around

9  the time of the settlement offer.  And that makes sense, when

10 the point of *Blue Ridge* is to fairly present the insurance

11 options regarding settlement.  And without a specific

12 settlement proposal, the *Blue Ridge* requirements don't mean

13 very much.

14     The insured needs to know its options.  And it doesn't

15 know its options if it just -- if it's required to go back to a

16 reservation of rights that may have been made, as in this case,

17 years before the specific settlement proposal.

18         **THE COURT:**  Well, the reservation of rights was made

19 to Armory's attorney.  Right?  Lawyer?

20         **MS. YOUNG:**  Correct.

21         **THE COURT:**  Okay.  That's a skilled professional, who

22 reads reservation-of-rights documents all day, every day, and

23 understands that they don't lapse over time.  I just don't see

24 anything in *Blue Ridge* or any other case that says that there's

25 an expiration date, or a best-by date.

1    In other words, you don't have to seasonably refresh a

2    reservation by an insured.  Is there anything that you know

3    that says they do?

4          **MS. YOUNG:**  No, Your Honor, I don't think you have to

5    seasonably refresh; but I think that the reservation needs to

6    be made close in time or at the time of the settlement offer,

7    or else it's not very meaningful.  And, yes, it was made to an

8    attorney; but you know, that was --

9          **THE COURT:**  Take it from the top.

10          **MS. YOUNG:**  It's fine.

11          **THE COURT:**  What case or statute says you'd have a

12   duty?  I don't think *Blue Ridge* says that.  They may have done

13   it in *Blue Ridge*.

14    In other words, it might be a best practice -- and even

15   that's debatable -- but I looked in vain for any actual

16   obligations.  You don't have to be *Mirandized*, so to speak, as

17   an insured before the settlement is approved.

18    In other words, the insurer doesn't have to pull out a

19   card, and necessarily repeat everything in the prior

20   reservation -- or even part of it -- while you're there.  All

21   the insurer has to do is say, *We're going to do this, unless*

22   *you'd like to take the case over and handle it, yourself.*

23    And do you know of any case that says anything different?

24          **MS. YOUNG:**  No, Your Honor.  And we're not arguing

25   for a continuing refreshment or an advisement of what the

1 reservation says; but I think that for these *Blue Ridge* notice

2 requirements to be meaningful in a practical way, the notice --

3 all three pieces of the notice need to be made close in time or

4 at the time of settlement.

5    And it would be very easy for an insurer to do that,

6 especially in this case.  Atain could have said, *Here's the*

7 *proposed settlement.  We want to agree to it.  We think it's*

8 *reasonable.  If you -- we intend to reserve our rights to seek*

9 *reimbursement.  And if you disagree, you have the right to*

10 *assume your own defense.*

11    These requirements are separate.  They are not contingent

12 on each other.

13    The later case, *Allstate v. Baglioni*, makes that clear;

14 that the point of *Blue Ridge* is to advise the insured of its

15 settlement options in a fair way.

16    And the settlement -- the insured has three choices when

17 it comes to settlement:  The insured can agree to the

18 settlement, and risk that it may have to pay it back; the

19 insured can reject the proposed settlement, and assume its own

20 defense; or there's a third option in the concurrence of

21 *Blue Ridge* that the insured can reject the settlement, keep the

22 defense, but waive the right to sue the insurer.  And --

23          **THE COURT:**  Okay.  Well, here is what troubles me.  I

24 appreciate all of that, but the way you've laid it out, you're

25 creating a trap.

1       In other words, if the insurance company does not

2   expressly say at a settlement conference -- or the lawyer for

3   the insured who is participating.  If the insurance company

4   does not expressly say, *We continue to stand on our reservation*

5   *of rights*, what you're effectively saying is, *They have waived*

6   *that reservation by omission*, which I don't think is a correct

7   statement of insurance law or contract law.

8       And, two, that allows the insured then to say, *Yes.*

9   *That's fine*, knowing that she has now basically built in a

10  fail-safe.  She gets the settlement value of the insurance

11  policy.  And if for some reason that money gets recalled, as it

12  did here, she can say, *Well, you can't do that.*

13      And I don't think that's an incentive that the insurance

14  laws or contract law would support.

15      Do you see what I'm saying?

16       **MS. YOUNG:**  I see what you're saying, Your Honor, but

17  I -- I wonder if Your Honor is focusing on the fact that

18  defendant's counsel was there.  For one, defendant's counsel is

19  not coverage counsel; we are, and we were not part of these

20  discussions.  So she is not as well versed in these issues, and

21  it's not really fair to expect her to be.

22      But I wonder what would happen if counsel was not there.

23  And I understand that at a settlement that's unlikely, but I

24  think we can't make that assumption.  We have to apply this to

25  all situations, where maybe the insurer is not --

1          **THE COURT:**  Well, this would be just for this case.

2     I would not --

3     I'm just a little, old District Judge.  We're not setting

4  policy for the state.  We're just saying "on these facts."

5     Let me ask you one question.  Just remind me.  Was the

6  lawyer who was present for --

7     Amory is the insured.  Right?

8          **MS. YOUNG:**  Yeah.  Correct.

9          **THE COURT:**  Was the lawyer for Amory who was present

10 at the mediation the same lawyer who got the

11 reservation-of-rights letter?

12          **MS. YOUNG:**  Yes, Your Honor.

13          **THE COURT:**  All right.  Ms. Stargardter, anything to

14 add?

15          **MR. STARGARDTER:**  No, Your Honor.  I just -- I think

16 what Armory and Mr. Acworth are trying to do is they're trying

17 to change the criteria in *Blue Ridge*.  And we've met their

18 criteria.  We issued the reservation-of-rights letter when we

19 accepted defense, which is when we're supposed to do it.  It

20 was a timely acceptance of the defense.  We spelled out all of

21 the issues that we had, and all rights on which we were

22 reserving, which, under *Blue Ridge*, is what we're required to

23 do, because it's at that point in time the insured gets to make

24 the first decision as to whether they want to accept the

25 defense; reject the defense.  And they know all of the

1  parameters.  And we've fulfilled that requirement.

2      American Modern Home, the insured, tried to tweak the

3  *Blue Ridge* requirements by saying, *Well, I need extra time to*

4  *consult with my attorney when the settlement is over*.  And the

5  Court rejected the notion that they could add additional

6  criteria to *Blue Ridge*.

7      There's three.  Atain met them all.  We timely issued the

8  reservation of rights.  We expressly reserved our rights.  And

9  then, Your Honor, in the meantime, we filed the dec. relief

10  action, which -- we sought reimbursement.  Both sides briefed

11  it in a motion for summary judgment, and we argued it.

12      And you're right.  We can't -- we can't be put in the

13  position where we waive a right we've reserved if we don't

14  continually reserve the right.  We're chasing our tails.  We

15  did what we were required to do under *Blue Ridge*.  They

16  consented.  And the moment they consented, we were done;

17  because when you read *Blue Ridge*, it's only when the insured

18  does not consent are we required at that point in time to tell

19  them that they have the right to assume the defense.  And

20  that's in *Blue Ridge*; that's in *Markel*, and the other cases

21  we've cited.

22      The *Allstate versus Baglioni* case can be easily

23  distinguished, because there, the Court found that the insured

24  did not consent until the settlement.

25      Here, even the insured doesn't claim they didn't consent.

1    There's no evidence that they didn't consent.

2        So, Your Honor, I think we've fulfilled *Blue Ridge*.  And I

3    think we're entitled to the $150,000.  Thank you, Your Honor.

4            **THE COURT:**  Is it collectible, or do you know?  Is

5    the money --

6        Armory's out of business.  Right?

7            **MS. YOUNG:**  It's moving its operations.  That's

8    correct.  Yeah.  It's moved them to another state.

9            **THE COURT:**  Oh, they are.  Okay.  So it's an ongoing

10   concern?

11           **MS. YOUNG:**  It is.

12       If I may briefly --

13           **THE COURT:**  Yes, of course.

14           **MS. YOUNG:**  -- address.

15       As Ms. Stargardter points out, there are three

16   requirements in *Blue Ridge*; and all of them need to be

17   fulfilled in order to preserve that right to reimbursement.

18       And we don't concede that the reservation was adequate;

19   but even if it was, there is still that issue of whether Atain

20   properly advised defendants that they had the right to assume

21   their own defense.  And *Baglioni* makes it clear that you have

22   to advise the insured of their right to assume your own

23   defense, regardless of whether they agree, because otherwise

24   you create this lapse in time, and you create this ambiguity

25   about, *Did the insured agree to the settlement?  Did it not?*

1      It's much -- a much clearer test.  As *Baglioni* says,

2   brighter-line rule is to require the insured to say, *You have*

3   *the right to assume your own defense, regardless of whether the*

4   *insured consents or not.*

5           **THE COURT:**  All right.

6           **MR. STARGARDTER:**  Can I quickly respond to that?

7           **THE COURT:**  Of course.  Yeah.

8           **MR. STARGARDTER:**  Sorry, Your Honor.  I think the

9   *Baglioni's* different or distinguishable for two reasons.

10      One, in that context, they were doing the discussion by

11   letter.

12      And, two, the Court specifically found that the insured

13   had not consented.

14      And under those facts, because they were having discussion

15   by letter, what the Court says is:  You have to give them all

16   three criteria.

17      But the rule is -- and when you go back to *Blue Ridge*, and

18   when you go back to *American Modern Family*, and when you go

19   back to *Markel*, and you look at those cases, what *Blue Ridge*

20   said is, *When the insured and the insurer do not consent to the*

21   *settlement, then the insurer must tell the insured that they*

22   *have the right.*

23      Here we never get there, because they consented.  And we

24   were doing it in person.  And she consented.  I said, *Do you*

25   *think this is a good amount of settlement?*

1          *Yes.*

2               **THE COURT:**  You shouldn't tell me.  I guess it's in

3     her declaration.

4               **MR. STARGARDTER:**  Okay.  Thank you, Your Honor.

5               **THE COURT:**  All right.  Thank you.

6               **MS. YOUNG:**  Thank you.

7               **THE COURT:**  I'll have this out as soon as I can.

8               **MR. STARGARDTER:**   Thank you, Your Honor.

9          (At 10:55 a.m. the proceedings were adjourned.)

10    I certify that the foregoing is a correct transcript from the

11    record of proceedings in the above-entitled matter.

12

13    _Lydia Zinn_____  June 15, 2019

14    Signature of Court Reporter/Transcriber   Date
      Lydia Zinn

15

16

17

18

19

20

21

22

23

24

25